J. A11030/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                                   :          PENNSYLVANIA
                  v.               :
                                                     :
WALTER MOORE, III,              :         No. 841 WDA 2013
                                                     :
             Appellant      :

Appeal from the Judgment of Sentence, November 16, 2012,
in the Court of Common Pleas of Lawrence County
Criminal Division at No. CP-37-CR-0000692-2009

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED SEPTEMBER 12, 2014**

Following a jury trial, Walter Moore, III was convicted of possession of a controlled substance, possession with intent to deliver a controlled substance, delivery of a controlled substance, and criminal use of a communication facility.  He appeals from the judgment of sentence entered on November 16, 2012, in the Court of Common Pleas of Lawrence County. We affirm.

In 2009, appellant came to the attention of law enforcement through Oscar Williams, a confidential informant ("CI").  (Notes of testimony, 10/8/12 at 57.)  On February 27, 2009, Agent Jason Hammerman of the Pennsylvania Attorney General's Office and the CI attempted to set up a controlled buy with appellant but they were unable to make contact with appellant by phone.  (*Id.* at 58-59.)  On the afternoon of March 2, 2009,

Agent Hammerman met with the CI and attempted to contact appellant at a new cell phone number, as the CI stated appellant's number had changed to 724-614-9399. (*Id.* at 59-60.) Again, they were unable to reach appellant. (*Id.* at 60.) However, later that day, at approximately 4:45 p.m., the CI contacted the agent and stated that he received a text message from appellant and a deal was arranged to purchase 1.25 ounces of crack cocaine for $1,500. (*Id.* at 61.)

Agent Hammerman made arrangements with other law enforcement officers and they met the CI, who was essentially strip searched for money, drugs, weapons, and other contraband in preparation for making a controlled buy. (*Id.* at 62-64.) Agent Hammerman then had the CI place a consensually recorded phone call to 724-614-9399, during which the location of the buy was arranged.[1] (*Id.* at 64.) Agent Hammerman identified appellant's voice during this call. (*Id.* at 66.) The agent testified, "The course of the [recorded] conversation that transpired where the CI asked [appellant] where he was and [appellant] said I'm right around the corner. The call was ended." (*Id.* at 65.) The entirety of the recorded call was played for the jury. (Notes of testimony, 10/9/12 at 30-32.)

The CI was provided with $1,500 in recorded bills and was dropped off at the meeting location, which was at the corner of Ash and Ray Streets in

---

[1] This call was played for the jury during trial. (Notes of testimony, 10/9/12 at 31.).

New Castle. (Notes of testimony, 10/8/12 at 72.) Agent Hammerman testified that he observed the CI walk onto Ray Street, and then the agent turned his vehicle onto Elder Street where he saw appellant driving a burgundy Cadillac Escalade pickup truck. (*Id.* at 73-74.) The agent then turned onto Scott Street to continue around the block, and appellant and the CI drove by in the Escalade; no one else was observed in the vehicle. (*Id.* at 77.) The agent stated that he could not see the interior of the vehicle. (*Id.* at 111.)

Shortly thereafter, the CI was seen on foot turning a corner, and he walked directly to a vehicle driven by Corporal Anthony Lagnese of the New Castle Police Department. (*Id.* at 78-79.) Appellant gave the corporal one and one quarter ounces of crack cocaine separated into five smaller bags. The entire buy took approximately four minutes. (*Id.* at 79.) No other people were observed on the street during this time, and the CI was not seen having contact with anyone other than law enforcement and appellant. (*Id.* at 79-80, 82.) The CI was again strip-searched, and no drugs, currency, or paraphernalia were found on his person. (*Id.* at 82.) The parties stipulated that the suspected crack was kept in an appropriate chain of custody, tested positive for cocaine, and weighed 33.5 grams. (*Id.* at 83; notes of testimony, 10/9/12 at 7-8.)

The CI testified at trial and explained that appellant provided him with his telephone number; the CI contacted appellant using this number and set

up a drug buy to take place on Ray Street. (Notes of testimony 10/9/12 at 140, 143.) The CI stated he was dropped off by Agent Hammerman; he walked up the street and got into appellant's vehicle. The CI gave appellant the agreed-upon $1,500 in exchange for the drugs. (*Id.* at 162.) The CI testified that from the time he was dropped off by law enforcement until he was picked up again, he had no contact with anyone other than appellant; he also stated that he never picked up anything from the ground. (*Id.* at 157.) The CI dictated a statement to the police and signed it, as he cannot read or write. (*Id.* at 160; notes of testimony, 10/8/12 at 17-19.) The CI admitted he continued to have legal difficulties due to his continued involvement in the drug trade; this was explored by both the Commonwealth and the defense.

Corporal Lagnese also identified the CI and appellant as the occupants of appellant's vehicle at the time of the buy. (Notes of testimony 10/10/12 at 31.) Corporal Lagnese picked up the CI after the buy and obtained the drugs. (*Id.* at 34.) Corporal Lagnese testified that he did not observe the CI meet with anyone other than appellant or make any stops along the way. (*Id.* at 29-30.) Except for a brief moment, the CI was under constant law enforcement surveillance. (*Id.* at 37-38.)

Following a three-day jury trial, appellant was convicted of one count each of possession of a controlled substance, possession of a controlled substance with intent to deliver, delivery of a controlled substance, and

criminal use of a communication facility. On November 16, 2012, appellant was sentenced to an aggregate of not less than five years nor more than ten years' incarceration, pursuant to 18 Pa.C.S.A. § 7508. Appellant filed a post-sentence motion on November 26, 2012, and following a hearing, the motion was denied. This timely appeal followed.

Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion. The following issues have been presented for our review:

> 1. Whether the trial court erred in denying Appellant's Post-Sentence Motions with respect to Appellant being denied a fair trial where Agent Jason Hammerman referenced a prior bad act at trial?
>
> 2. Whether the trial court erred where it held that the Commonwealth's conduct in the following instances failed to constitute a violation of the requirements of **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):
>
>> i. where the Commonwealth did not disclose the investigatory notes of Agent Jason Hammerman?
>>
>> ii. where the trial court failed to mandate that the Attorney General disclose its internal operating procedures regarding the use of the confidential informant in this case, Oscar Williams (hereinafter, "C.I.")?
>>
>> iii. where the Commonwealth failed [to] disclose the grand jury

testimony of Agent Jason Hammerman?

iv. Where the Commonwealth failed to provide the debriefing location of the C.I.?

3. Whether the trial court erred in failing to suppress, and subsequently allowing into evidence, certain text messages, where said messages were not properly authenticated?

4. Whether the trial court erred where it held that Appellant's convictions were not against the sufficiency of the evidence?

5. Whether the trial court erred where it held that his convictions were not against the weight of the evidence?

6. Whether the trial court erred at trial where it allowed the C.I. to dress in street clothes, as opposed to prison garb, when he was incarcerated at the time of trial?

7. Whether the trial court erred for failing to strike a juror where she was the wife of a retired police chief?

8. Whether the trial court erred at trial by failing to sustain defense counsel's continuing objection that the Commonwealth was leading the C.I. during direct examination?

9. Whether the trial court erred where it held that Appellant was properly sentenced pursuant to the mandatory term of imprisonment under 18 Pa.C.S.A. §7508, when the Commonwealth failed to provide defense counsel with reasonable notice to proceed under said statute?

10. Whether the trial court erred in not allowing Appellant to proceed with a Motion for Habeas

Corpus after he waived his preliminary hearing?

11. Whether the trial court erred at Appellant's Omnibus Pretrial Hearing by permitting Agent Jason Hammerman to read a statement of consent allegedly signed by the C.I., over the hearsay objection of defense counsel, thereby allowing the charges to improperly proceed to a jury trial?

12. Whether the trial court erred at Appellant's Omnibus Pretrial Hearing by permitting Agent Jason Hammerman to read a statement of consent allegedly signed by the C.I. in this case, where the C.I. did not testify as to whether he was coerced into signing said statement, thereby using such evidence to conclude that it was proper to allow the Commonwealth to proceed to trial against Appellant?

Appellant's brief at 6-9.[2]

The first issue presented concerns whether the trial court erred in declining to grant a mistrial after Agent Hammerman referenced a "prior bad act" on cross-examination.

"It is axiomatic that evidence of prior crimes [or bad acts] is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." *Commonwealth v. Jackson*, 900 A.2d 936, 940 (Pa.Super. 2006) (internal citations omitted). *See* Pa.R.E. 404(b)(1). This rule is violated where evidence presented to the jury either expressly,

---

[2] In addressing these issues, we note that appellant has failed to indicate where in the record the issues are preserved for appeal. *See* Pa.R.A.P. 2119(e) (statement of place of preservation of issues).

or by reasonable implication, indicates that the defendant has engaged in other criminal activity. *Commonwealth v. Padilla*, 923 A.2d 1189, 1195 (Pa.Super. 2007), *appeal denied*, 934 A.2d 1277 (Pa. 2007). However, mere passing reference to prior criminal activity is insufficient to establish improper prejudice by itself. *Id.* The inquiry into whether prejudice has accrued is necessarily a fact specific one. *Id.*

Appellant directs our attention to the following portion of testimony:

> Q: Okay. So, and again, the only conversation you heard between this confidential informant and [appellant] is the confidential informant saying where you at, and him saying I'm around the corner?
>
> A: Correct.
>
> Q: And when you said that he--he was saying around the corner was it your understanding that he was saying he was around the corner from the CI's house?
>
> A. No. Well, we weren't sure. He said the CI advised us that **this was an area where they had done prior transactions**. So we knew that's where to go.

Notes of testimony, 10/9/12 at 102 (emphasis added). The defense lodged an objection, arguing that the witness made a reference to a prior bad act. (*Id.*)

Appellant now argues that the agent's response "unavoidably imbedded in the minds of the jurors that [a]ppellant had a history of selling

drugs . . . at the exact spot at which it is alleged that the underlying deal took place." (Appellant's brief at 21.)

Appellant relies on **Commonwealth v. LeGares**, 709 A.2d 922 (Pa.Super. 1998). In **LeGares**, we found that the trial court erroneously admitted into evidence criminal activity of the appellant, which was unrelated to the charges. In **LeGares**, the admitted evidence was testimony that appellant had discharged a firearm on a prior occasion, similar to the one used in the murder, approximately three and one-half blocks away from the murder scene. **Id.** at 926. We find **LeGares** distinguishable as the testimony therein was clearly referring to the appellant. Here, as the trial court found, the agent's use of the term "they" was ambiguous and could have been a reference to the CI's prior transactions with others rather than appellant. (Trial court opinion, 5/4/12 at 24.)

We conclude there is no merit to appellant's argument. We fail to see how the passing reference testimony could be characterized as evidence of "prior bad acts" of appellant. There was no explicit mention of a prior drug transaction involving appellant. We agree with the trial court that the reference was veiled and did not have the unavoidable effect of depriving appellant of a fair trial. We also note that the challenged remark was elicited by defense counsel in response to a question asked and the response was not exploited by the Commonwealth. Additionally, while appellant

reserved the right to request a curative instruction, he ultimately did not seek such an instruction. No relief is due.

Next, appellant argues that he was denied a fair trial as the Commonwealth violated **Brady**, **supra**, four separate times. (Appellant's brief at 22.) We will address each **Brady** claim in the order presented in appellant's brief.

> To establish a violation under **Brady**, an appellant must demonstrate: 1) suppression by the prosecution 2) of evidence, whether exculpatory or impeaching, favorable to the [appellant], 3) to the prejudice of the [appellant]. The evidence purportedly suppressed must have been material to guilt. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

**Commonwealth v. Clark**, 961 A.2d 80, 89 (Pa. 2008) (citations and quotation marks omitted) (alteration in original).

The first allegation of a **Brady** error involves Agent Hammerman's initial notes of the investigation, which were destroyed. (Appellant's brief at 23-25.) During trial, Agent Hammerman testified that he destroyed his initial notes after he drafted his report. (Notes of testimony, 10/9/12 at 34.) Appellant misperceives the essence of **Brady**. Once defense counsel has made a request for so-called "**Brady** material," which again is exculpatory evidence, the prosecution is under an obligation to produce all such material responsive to the request to an accused. Here, there was nothing to produce as the agent had destroyed his notes; and as such, this matter is

not properly characterized as a **Brady** issue. We are thus unpersuaded by this argument and agree that appellant has not demonstrated that written notes were withheld by the prosecution.[3]

Next, appellant avers that the Commonwealth failed to produce the debriefing location of the CI. (Appellant's brief at 25.) Following review, we find the trial court's opinion, filed April 25, 2013, properly disposes of this question. We will adopt it as our own and affirm on that basis. (Trial court opinion, 4/25/13 at 22-23.)

Appellant also argues that the Commonwealth committed a **Brady** violation by not disclosing the Attorney General's operating procedures regarding the use of the CI. (Appellant's brief at 28.) Again, we find no error with the trial court's rationale regarding this **Brady** claim. The trial court's opinion disposing of appellant's amended omnibus motion, filed on May 4, 2012, and its Rule 1925(a) opinion, filed April 25, 2013, properly dispose of this question. We will adopt them as our own and affirm on that basis. (Trial court opinion, 5/4/12 at 5-7; trial court opinion 4/25/13 at 21.)

The final **Brady** claim presented concerns the Commonwealth's failure to disclose the grand jury testimony of Agent Hammerman. (Appellant's

---

[3] Moreover, as the trial court points out, appellant has not directed this court to the place in the record where he requested Agent Hammerman's handwritten notes. (Trial court opinion, 4/25/13 at 22.) **See** Pa.R.A.P. 2117(c)(4), Pa.R.A.P. 2119(e). We observe that appellant's omnibus pre-trial motions to compel discovery did not address or request the production of these notes. (Docket #46, 52.) Additionally, this issue was not addressed at the pre-trial hearing.

brief at 29.) Following a review of the record, we cannot find that appellant requested or applied for the disclosure of the grand jury testimony. (**See** Docket #46, 52.) Nor does appellant direct this court to where he has preserved this issue for appeal during trial; appellant is required to set forth in both the statement of the case and in the argument of the appellate brief the place in the record where the issue presented for decision on appeal has been raised or preserved below. Pa.R.A.P. 2117(c)(4), Pa.R.A.P. 2119(e). Thus, we could find this claim waived.

However, after reviewing appellant's argument on appeal, we agree with the Commonwealth that appellant has failed to establish that there was information in the agent's grand jury testimony that differed from his trial testimony in a way that was favorable to the defense. Appellant merely states that "it absolutely can be inferred that [the] grand jury testimony would have provided Appellant, at least, with an invaluable tool for cross-examination of [Agent] Hammerman." (Appellant's brief at 29.) Mere speculation will not suffice.

We now turn to appellant's claim that he was denied a fair trial because the Commonwealth introduced text messages without proper authentication. (Appellant's brief at 29.) Specifically, he avers that the CI testified to the content of alleged text messages from memory, and there was no circumstantial evidence offered to substantiate the messages.

In permitting the testimony, the trial court, relied on ***Commonwealth v. Koch***, 39 A.3d 996 (Pa.Super. 2011), ***appeal granted***, 44 A.3d 1147 (Pa. 2012). In ***Koch***, the defendant was convicted of possession with intent to deliver and possession of a controlled substance as an accomplice. On appeal, the defendant challenged the admission at trial of drug-related text messages from her phone, contending the messages were not properly authenticated as there was no evidence substantiating that she was the author of the messages and the messages were inadmissible hearsay. ***Id.*** at 1002, 1005. This court reversed, finding merit to both contentions. ***Id.*** at 1005-1007.

The court addressed the question of authentication of text messages as an issue of first impression, finding precedent from Pennsylvania and other states relied upon the principle that e-mails and text messages are documents subject to the same general requirements for authenticity as non-electronic documents. ***Id.*** at 1003-1004. The ***Koch*** court stated:

> As these cases illustrate, the difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.
>
> Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart

> phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the phone number is assigned.

*Id.* at 1004-1005.

The **Koch** court found the trial court erred in admitting the text messages because although the defendant acknowledged ownership of the phone, a police officer conceded that the author of the drug-related messages could not be ascertained and some of the messages referred to the defendant in the third person, indicating she did not write some of the messages. *Id.* at 1005. We found that authentication of electronic communications requires more than mere confirmation that the number belonged to a particular person and that additional evidence which tends to corroborate the identity of the sender is required. *Id.* at 1005. The court noted there was no testimony from the persons who sent or received the text messages and no contextual clues in the messages tending to reveal the identity of the sender. *Id.* We found the defendant's physical proximity to the telephone at the time of arrest was of no probative value in determining whether she authored text messages days or weeks before. *Id.*[4]

---

[4] Furthermore, the messages were not admissible as admissions of a party opponent because the Commonwealth was unable to prove the defendant was the author of the messages. *Id.* at 1006.

The trial court, and the Commonwealth, posits that sufficient circumstantial evidence was presented to corroborate appellant's identity as the sender of the messages the CI testified that he received. First, the CI who was a party to the text messages, and not a police officer as in **Koch**, testified regarding the contents of the text messages. The CI testified that he received a text message from the cellular telephone number assigned to appellant, and the messages set forth the details of the transaction which would take place. The CI then received a telephone call from this number indicating that he was "around the corner" and ready to meet to complete the sale. Agent Hammerman verified that it was appellant's voice on the call. When the CI met with appellant, the exact transaction described in the texts messages occurred. When combined, all of this evidence is sufficient to authenticate that the text message to the CI was written by appellant, and the court did not abuse its discretion in admitting the CI's testimony.[5]

The fourth issue presented concerns the sufficiency of the evidence supporting his convictions. (Appellant's brief at 31.) Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

---

[5] Additionally, the officer was cross-examined about the investigation and the fact that they did not pull any of the phone logs from the CI to see with whom he was communicating. (Notes of testimony, 10/9/13 at 120, 126-128.)

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-151 (Pa.Super. 2013), quoting *Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa.Super. 2005), *appeal denied*, 897 A.2d 452 (Pa. 2006) (citations omitted).

We note that, in his sufficiency arguments, appellant suggests that the Commonwealth's witnesses were incredible. (*See* appellant's brief at 34-36.) A sufficiency of the evidence review, however, does not include an assessment of the credibility of the testimony offered by the Commonwealth. *Commonwealth v. Brown*, 648 A.2d 1177, 1191 (Pa. 1994). Such a claim is more properly characterized as a weight of the evidence challenge. *Commonwealth v. Bourgeon*, 654 A.2d 555, 558 (Pa.Super. 1994), *appeal denied*, 668 A.2d 1121 (Pa. 1995).

Nevertheless, we find no error with the trial court's findings regarding the sufficiency of the evidence. We have reviewed the briefs, the relevant law, and the opinion authored by the Honorable Thomas M. Piccione. We find that Judge Piccione's opinion correctly disposes of appellant's sufficiency issue, and accordingly, we affirm on that basis. (Trial court opinion, 4/25/13 at 10-16.)

Appellant also argues that the verdicts were against the weight of the evidence. (Appellant's brief at 37.)

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
>> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must

> be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original) (citations omitted).

Appellant refers us to the argument he made in his sufficiency challenge concerning the veracity of the CI. He again points out that a hand-to-hand transaction was never observed. The trial court, however, reviewed the evidence and rejected appellant's weight claim based on the entirety of the record. The parties presented conflicting evidence that the jury, as fact-finder, was authorized, and indeed required, to accept or reject. The jury's choice to believe the CI's version of the events was purely within its discretion and will not be disturbed on appeal; it is not this court's duty, but that of the fact-finder, to resolve a credibility dispute. Upon review of the entire record and in deference to our standard of review, we determine that the trial court did not abuse its discretion by finding that the verdict did not shock the conscience. Thus, we conclude that the court made no error in refusing to grant a new trial based on the weight of the evidence.

Next, appellant avers that he was denied a fair trial as the CI was permitted to wear civilian clothing instead of his prison attire. (Appellant's

brief at 39.) Noting that there is no precedential decision to rely on, appellant suggests that it is "inappropriate to allow an inmate-witness to wear plainclothes in order to give the perception of trustworthiness in the minds of the jury." (*Id.*) We find this argument to be wholly without merit and illogical. As the trial court succinctly stated, "[appellant's] counsel extensively questioned the CI about his prior arrests and his current residence in prison. [Appellant's] presumption of innocence was in no way affected by the CI's attire." (Trial court opinion, 8/5/13 at 11.)

Appellant next claims that he was denied a fair trial where the trial court allowed the wife of a retired police chief to sit on the jury panel. However, the notes of testimony from the *voir dire* were not transcribed. "Pa.R.A.P. 1911 makes it abundantly plain that it is the responsibility of the Appellant to order all transcripts necessary to the disposition of his appeal." *Commonwealth v. Steward*, 775 A.2d 819, 833 (Pa.Super. 2001), *appeal denied*, 792 A.2d 1253 (Pa. 2001). Moreover, appellant has not attempted to supplement the record with a statement in absence of transcript pursuant to Pa.R.A.P. 1923. Therefore, we consider the issue waived. *Id.*

In the eighth issue, appellant contends that he was denied a fair trial where the Commonwealth asked leading questions during the direct examination of the CI. (Appellant's brief at 41.) Following review of the record, we cannot find that the trial court abused its discretion.

Generally, the party calling a witness in a criminal proceeding may not interrogate the witness by putting leading questions to the witness. **Commonwealth v. Chambers**, 599 A.2d 630, 640 (Pa. 1991). However, Pennsylvania Rule of Evidence 611(c) recognizes the necessity of permitting leading questions "to develop" a witness' testimony. Pa.R.E. 611(c). The rule that a party calling a witness is not permitted to ask leading questions is to be liberally construed, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness. **Chambers**, **supra**; **Commonwealth v. Deitrick**, 70 A. 275 (Pa. 1908).

As the Commonwealth observes, defense counsel lodged three objections during direct examination. The first objection and the third objection were sustained; the Commonwealth voluntarily rephrased the second question. (Notes of testimony, 10/9/12 at 145-146, 165, 168-170.) The trial court observed the CI was not sophisticated and provided the prosecutor some leeway under the circumstances. We cannot find that the elicited responses were of such a character that the information would not have come into evidence but for the leading format. Moreover, appellant has not cited any legal authority to successfully demonstrate that the type of questions posed by the prosecutor went beyond the recognized exception articulated in the Rules of Evidence or that these questions and the elicited

responses proved prejudicial. **See generally** Pa.R.A.P. 2119. Accordingly, no relief is due.

Next, appellant avers that he did not receive appropriate notice of the Commonwealth's intent to seek the applicable mandatory minimum sentence. (Appellant's brief at 41.) We find the trial court has properly disposed of this issue, and thus, we affirm on that basis. (Trial court opinion, 4/25/13 at 27-29.)

In his tenth issue, appellant contends the trial court erred in denying his writ of **habeas corpus**. (Appellant's brief at 42.) No relief is due.

At the time scheduled for a preliminary hearing on June 18, 2009, appellant entered into a stipulation that "the facts that the Commonwealth would present would be sufficient to prove a prima facie case." (Notes of testimony, 6/18/09 at 2.) Thereafter, appellant filed a petition for writ of **habeas corpus**. A hearing on appellant's amended omnibus motion was held on April 25, 2012, and the Commonwealth argued that appellant waived his right to challenge the Commonwealth's evidence in a writ of **habeas corpus** due to its prior stipulation. The trial court concurred and denied the petition.

We find no error. If a **habeas** hearing were held, the court would have relied on this stipulation. **Commonwealth v. Morman**, 541 A.2d 356, 360 (Pa.Super. 1988) ("To make this determination [at a **habeas corpus** hearing], the trial court should accept into evidence the record from the

preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its prima facie case."). Thus, as the Commonwealth points out, a *habeas* hearing would have served no purpose. Furthermore, it is well settled that "once a defendant has gone to trial and has been found guilty of a crime, any alleged defect in the preliminary hearing is rendered immaterial." ***Commonwealth v. Kelley***, 664 A.2d 123, 127 (Pa.Super. 1995), ***appeal denied***, 674 A.2d 1068 (Pa. 1996). Therefore, such a claim cannot serve as a basis for relief.

The final claim presented is whether the trial court improperly applied the rules of evidence at the hearing on the amended omnibus pre-trial motion and improperly allowed the case to proceed to trial. (Appellant's brief at 43.) Once again, we affirm based on the trial court's well-reasoned opinion. (Trial court opinion, 8/5/13 at 7-8.)

Judgment of sentence affirmed.

Gantman, P.J.E joins the Memorandum.

Olson, J. concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

:

VS. : LAWRENCE COUNTY, PENNSYLVANIA

:

WALTER MOORE, III, a/k/a : NO. 692 OF 2009, CR.

WALTER KEVIN MOORE, III :

: OTN: K894083-1

**APPEARANCES**

For the Commonwealth:       Kristine M. Ricketts, Esquire
                            Deputy Attorney General
                            Office of the Attorney General
                            105 Independence Drive
                            Butler, PA  16001

For the Defendant:          Bradley G. Olson, Jr., Esquire
                            312 North Jefferson Street
                            New Castle, PA 16101

**OPINION**

Hodge, J.                                           May 4, 2012

Before the Court for disposition is an Amended Omnibus Pretrial Motion consisting of a Petition for Writ of Habeas Corpus, a Motion to Suppress Evidence, and a Motion to Compel Discovery, filed by the Defendant, Walter Moore, III (hereinafter, "Defendant"). A hearing on this matter was held on April 25, 2012, at which time the Commonwealth submitted the Preliminary Hearing Transcript and testimony of Agent Jason M. Hammerman.

According to the findings of the investigating grand jury, the Defendant arranged to meet with Oscar Williams (hereinafter, "C.I."), a confidential informant working in

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 MAY -4 A II: 37

HELEN I. MORGAN
PRO AND CLERK

conjunction with the Pennsylvania Office of Attorney General, on March 2, 2009. At the prearranged meeting, the Defendant sold 33.5 grams of cocaine to Oscar Williams. The transaction occurred in New Castle, Lawrence County, Pennsylvania.

The Defendant was ultimately charged with Possession of a Controlled Substance (35 P.S. §780-113(a)(16)), Possession with Intent to Deliver a Controlled Substance (35 P.S. §780-113 (a)(30)), Delivery of a Controlled Substance (35 P.S. §780-113 (a)(30)), and Criminal Use of a Communication Facility (18 Pa.C.S.A. §7512). The Defendant now asserts that the Commonwealth failed to present sufficient evidence to establish a prima facie case for the aforementioned charges filed at both cases.

A preliminary hearing was held on June 18, 2009. The transcript taken at the preliminary hearing indicates that the Defendant did not waive his right to the preliminary hearing, but he stipulated "that the facts that the Commonwealth would present would be sufficient to prove a prima facie case" of the charges filed. (N.T. June 18, 2009, p.2). Based on the stipulation presented at the preliminary hearing, the Commonwealth argues that the Defendant has waived his right to challenge the Commonwealth's evidence by filing a Writ of Habeas Corpus.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 MAY -4 A 11: 37

HELEN I. MORGAN
PRO. AND CLERK

The Defendant asserts that he did not waive his right to file a Writ of Habeas Corpus, and he argues that there is insufficient evidence to establish that he waived his right to file a Writ of Habeas Corpus knowingly and intelligently.

It is well settled that a petition for a writ of habeas corpus is the proper means for testing a pre-trial finding that the Commonwealth has sufficient evidence to establish a prima facie case. A pre-trial petition for a writ of habeas corpus, therefore, is similar in purpose to a preliminary hearing. Commonwealth v. Morman, 541 A.2d 356, 359 (Pa.Super. 1988). The burden is on the Commonwealth to establish at least a prima facie case that a crime has been committed and the accused is the person who committed the specified crime. Id.

When a defendant fails to challenge the Commonwealth's evidence at a preliminary hearing or stipulates to the sufficiency of the evidence that would otherwise be presented, the defendant cannot later challenge the Commonwealth's evidence by filing a Writ of Habeas Corpus. Commonwealth v. Wilkins, No. 1180 of 2004, CR. (Law.Co.Com.Pleas 11/4/2005)(affirming Commonwealth v. Carbone, No. 1055 of 2000, CR (Law.Co.Com.Pleas 4/19/2001). Defendant's Petition for Writ of Habeas Corpus is therefore denied.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 MAY -4 A 11: 37

HELEN I. MORGAN
PRO AND CLERK

The Defendant next asserts that the Commonwealth failed to comply with the Pennsylvania Wiretapping and Electronic Surveillance Act, 18 Pa.C.S.A. §5704, in that the intercepted conversations between the Defendant and the C.I. were not consented to by either party. The Commonwealth contests the Defendant's assertion by submitting a letter to defense counsel that establishes that the prosecuting officer, Attorney Ricketts, did approve the wiretap. See Commw.'s Exhibit #1. The Commonwealth also submitted a Memorandum of Consent, which was executed by the C.I. thereby authorizing interceptions of phone conversations with the Defendant from February 2, 2009 through March 27, 2009. See Commw.'s Exhibit #5.

Section 5704 of the Pennsylvania Wiretapping and Electronic Surveillance Act creates a list of exceptions to communications that are otherwise barred from interception. The applicable exception to this case provides as follows:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> > (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities…where:
> >
> > > (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a

deputy attorney general designated in writing by the Attorney General…of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception[.]

18 Pa.C.S.A. § 5704(2)(ii).

This Court must recognize that the United States District Court previously determined that the 18 Pa.C.S.A. § 5704(2)(ii) is preempted by the Federal Wiretap Act, 18 U.S.C.A. §2516. See Bansal v. Russ, 513 F.Supp.2d 264 (E.D. Pa. 2007)(holding that Federal law does not require law enforcement officers to obtain the approval of the State Attorney General or a District Attorney when conducting a wiretap without a warrant where one party has consented to be recorded).

Regardless of the Bansal Court's decision, this Court finds that the Commonwealth has properly complied with §5704 by providing evidence of the C.I.'s consent to the interception as well as the Deputy Attorney General's authorization of consent. The Defendant's Motion to Suppress is therefore denied.

The final issue before the Court for a determination is the Defendant's Motion to Compel Discovery. In his motion, the Defendant requests this Court to compel the Commonwealth to provide the contract entered into by the C.I. with the

33RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

5

Office of Attorney General, the Bureau of Narcotics Investigation's (hereinafter, the "BNI") internal operating agreement, and internal documents identifying protocol exercised by the BNI concerning the employment of confidential informants in general. The Defendant asserts that the requested items may establish bias or motive by the C.I. to testify against the Defendant and that these items are necessary in preparation for cross-examination of the C.I.

The Pennsylvania Rules of Criminal Procedure, Rule 573 provides the Court with discretion to order the production of any evidence "material to the preparation of the defense," as long as the request is reasonable. Pa.R.Crim.P. 573(B)(2)(a). Evidence is material to the preparation of the defense if there is a reasonable possibility that the information sought will materially aid the defendant in presenting his defense and is not obtainable from another source. Commonwealth v. King, 932 A.2d 948, (Pa.Super. 2007). Rule 573 goes on to permit discovery of "any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice." Pa.R.Crim.P. 573(B)(2)(a)(iv). When the requested information pertains to the credibility and motive of a testifying witness, the Defendant must demonstrate that the reliability of the witness may well be determinative

of defendant's guilt or innocence. <u>Commonwealth v. Marinelli</u>, 810 A.2d 1257 (Pa. 2002).

In disposing of Defendant's motion, the Court considers the fact that the C.I. will be a vital witness to the Commonwealth's case-in-chief. Information regarding any bias or motive for testifying against the Defendant can be a determinative factor in the jury's choice to accept or reject the C.I.'s testimony as truthful. For this reason, the Court orders the Commonwealth to provide the Defendant with the contract entered into by the C.I. with the Office of Attorney General.

With respect to the Defendant's request for the BNI's internal operating agreement and internal documents identifying protocol exercised by the BNI concerning the employment of confidential informants in general, the Court cannot make the same determination regarding their necessity to the Defendant's case.

Consistent with this Opinion, the Court will enter the following Order of Court:

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

7

TRANSMISSION VERIFICATION REPORT

TIME : 05/04/2012 11:51
NAME :
FAX : 7246562479
TEL : 7246562479
SER.# : BROLSJ990845

DATE,TIME          05/04 11:50
FAX NO./NAME       OLSON B
DURATION           00:01:11
PAGE(S)            09
RESULT             OK
MODE               STANDARD
ECM

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

VS. : LAWRENCE COUNTY, PENNSYLVANIA

WALTER MOORE, III, a/k/a : NO. 692 OF 2009, CR.
WALTER KEVIN MOORE, III

: OTN: K894083-1

## ORDER OF COURT

AND NOW, this 4th day of May, 2012, this case being before the Court on April 25, 2012 regarding the Defendant's Petition for Writ of Habeas Corpus, with Deputy Attorney General Kristine M. Ricketts, Esquire, appearing and representing the Commonwealth of Pennsylvania, and with Bradley G. Olson, Jr., Esquire, appearing and representing the Defendant, Walter Moore, III, and after completing a thorough review of the Preliminary Hearing Transcript and applicable record, the Court finds, and it is hereby ORDERED and DECREED as follows:

1. The Defendant's Petition for Writ of Habeas Corpus

... to the attached Opinion.

COMMONWEALTH OF
PENNSYLVANIA,

vs.

WALTER KEVIN MOORE, III,

      Defendant.

:   IN THE COURT OF COMMON PLEAS
:
:   LAWRENCE COUNTY, PENNSYLVANIA
:
:   NO. 692 of 2009, C.R.
:
:   OTN: K894083-1
:

## APPEARANCES

FOR THE COMMONWEALTH:     Maureen Sheehan-Balchon, Esquire
Deputy Attorney General
Drug Strike Force Section
105 Independence Blvd.
Butler, PA 16001

FOR THE DEFENDANT:     Bradley Olson, Esquire
312 North Jefferson Street
2nd Floor
New Castle, PA 16101

## OPINION

Piccione, J.                                April 25, 2013

Before the Court for disposition is Defendant's Post Verdict Motion, which consists of a Motion in Arrest of Judgment, a Motion for a New Trial, and a Motion to Modify Sentence (hereinafter, collectively the "Motion" or "Post Verdict Motion"). The Defendant, Walter Kevin Moore, III (hereinafter, the "Defendant"), argues this Court should arrest the judgment against him or grant the Defendant a new trial because (1) there was insufficient evidence to sustain his conviction, (2) his conviction was against the weight of the evidence presented, and (3) he was denied rights granted to him. Defendant requests this Court enter an Order to arrest the judgment entered against him or, in the alternative, grant the Defendant a new trial. Additionally, the Defendant requests this Court modify and reconsider the Defendant's sentence because he was

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2013 APR 25 P 12: 05

HELEN I. MORGAN
PRO AND CLERK

allegedly improperly sentenced pursuant to the mandatory term of imprisonment. For the reasons set forth below, the Defendant's requests are denied.

Following a three-day jury trial, the Defendant was convicted of Possession of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(16), Possession with the Intent to Deliver a Controlled Substance pursuant to 35 P.S. § 780-113(a)(30), Delivery of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(30), and Criminal Use of a Communication Facility pursuant to 18 Pa.C.S.A. § 7512. The Defendant was thereafter sentenced by this Court on November 16, 2012 to an aggregate of not less than five (5) years nor more than ten (10) years of incarceration in a state criminal facility. This sentence was the result, *inter alia*, of this Court's imposition of the mandatory minimum sentence for the Defendant's conviction on the charge of Delivery of a Controlled Substance pursuant to 18 Pa.C.S.A. § 7508. On November 26, 2012, the Defendant filed the instant Motion. A hearing was held in this Court on the Motion on March 28, 2013.

A challenge to the sufficiency of the evidence will be reviewed under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2

> Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witness and weight of the evidence produced, is free to believe all, part or none of the evidence.

Com v. Devine, 26 A.3d 1139, 1145 (Pa. Super. 2011) (citing Comm. v. Jones, 874 A.2d 108, 120-21 (Pa. Super. 2005).

In reviewing the evidence in the light most favorable to the Commonwealth, there is sufficient evidence to sustain the guilty verdict on the above charges. On or about March 2, 2009, under the supervision of Agent Jason Hammerman[1] (hereinafter, "Agent Hammerman") and the Pennsylvania Office of the Attorney General, a confidential informant (hereinafter, a "CI") performed a controlled purchase from the Defendant, which yielded a substance that tested positive for cocaine. Agent Hammerman became familiar with the CI in August 2008. A controlled purchase was executed upon the CI shortly after the CI moved to Lawrence County from Mississippi. Additionally, On November 5, 2008, the CI was arrested by the New Castle Police Department in a high drug trafficking area, after which time the CI entered into a confidential informant agreement with the Office of the Attorney General. Agent Hammerman testified during the trial that he became aware of the Defendant from information provided by the CI. The CI testified that he was testifying in the instant case as a result of his plea negotiation related to the November 5, 2008 arrest. Based upon information provided by the CI, Agent Hammerman began to investigate the Defendant and became familiar with his looks, his vehicles, and the areas in which he lived and frequented.

---

[1] Agent Jason Hammerman is a special agent with the Drug Enforcement Agency.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

3

Agent Hammerman testified that on February 27, 2009 the CI attempted to make contact with the Defendant by dialing his cell phone number, but was unable to reach him. On March 2, 2009, the CI met Agent Hammerman at approximately 2:39 P.M. and the CI began attempting to contact the Defendant. The CI was released at 3:30 P.M., after he was unable to reach the Defendant. Agent Hammerman informed the CI that he would be in the area until approximately 5:00 P.M., and the CI was instructed to contact Agent Hammerman if he was able to get in contact with the Defendant. No surveillance was conducted on the CI or his phone after the CI left the presence of the agents. Thereafter, at 4:45 P.M. the CI contacted Agent Hammerman and advised him that he made contact with the Defendant. The CI informed Agent Hammerman that the Defendant contacted him via text message and had arranged a deal for one and one quarter (1.25) ounces of crack cocaine in exchange for $1,500.00.

Agent Hammerman picked up the CI and took him to an area on Croton Avenue and effectively conducted a strip search on the CI to ensure he did not have any U.S. currency, drugs, paraphernalia, or weapons on his person. Nothing was located on the CI. After completing the search, Agent Hammerman instructed the CI to make a consensually recorded phone call to the Defendant at 724-614-9399, which was the number provided by the CI. This phone call was ultimately recorded by the Commonwealth and played for the jury during the trial. During the call, the CI asked the Defendant where he was and the Defendant responded that he was around the corner. The CI informed Agent Hammerman that the Defendant would probably be in the area of Ray Street and Elder Street in New Castle, Pennsylvania. Agent

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

4

Hammerman testified that he recognized the voice as the Defendant's voice. As a result, Agent Hammerman dispatched surveillance agents to the area of Ray Street and Elder Street; he and the CI also drove to the area at approximately 5:00 P.M. The CI was then provided with $1,500.00 of prerecorded funds, and he was dropped off on Ray Street, just before Ash Street. On this particular night, it was approximately 15 degrees, without precipitation, but with lingering snow on the ground.

Agent Hammerman testified that he was assisted by Special Agent Geraci, Corporal Lagnese, Chief Salem, and James Paglia[2]. Agent Geraci was in the vehicle with Agent Hammerman, and Agent Hammerman had an open telephone line with Corporal Lagnese. Agent Hammerman remained stationary in his vehicle while he viewed the CI walk onto Ray Street. While the CI was walking, Agent Hammerman informed Corporal Lagnese he was going to turn off Ray Street onto Elder Street, thereafter traveling eastbound. On the north side of Elder Street, Agent Hammerman viewed a burgundy Cadillac Escalade pickup truck (hereinafter, the "Escalade") in the opening of an alleyway. Agent Hammerman recognized the vehicle to be the Defendant's and observed the Defendant in the driver's seat. Agent Hammerman testified that he could see through the windshield when he identified the Defendant and noted that there were no other individuals in the vehicle. When Agent Hammerman's vehicle passed the Escalade, it started to move westbound. Agent Hammerman then turned south onto Scott Street then to a stationary position until the transaction was terminated.

---

[2] Special Agent Geraci is a special agent with the Drug Enforcement Agency; Corporal Anthony Nick Lagnese is a corporal employed by the City of New Castle Police Department; Chief Robert Salem is the Chief of the City of New Castle Police Department; and James Paglia is an officer employed by the City of New Castle Police Department. These individuals were involved in a joint narcotics investigation in the City of New Castle, in Lawrence County during the instant time period.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

5

Subsequently, Agent Hammerman viewed the Escalade turn from Ray Street onto Ash Street and it began driving towards Agent Hammerman's vehicle on Scott Street. Agent Hammerman observed the Defendant driving the Escalade with only the CI in the passenger seat until it turned northbound on Scott Street. Agent Hammerman began traveling southbound on Scott Street and Agent Hammerman continued observing from the rearview mirror. Agent Hammerman saw the Escalade turn onto Elder Street, at which point Agent Hammerman lost sight of the vehicle as he continued driving straight on Scott Street.

Corporal Lagnese was conducting physical surveillance in an unmarked vehicle located on Ray Street. He witnessed Agent Hammerman drop off the CI on Ray Street. He observed the CI continue to walk north on Ray Street to the interserction of Ray Street and Elder Street. At that intersection, Corporal Lagnese witnessed the CI enter into the Escalade. Corporal Lagnese did not see the CI make any contact with any other person or make any stops. Corporal Lagnese observed the Escalade turn south bound onto Ray Street towards Corporal Lagnese's vehicle. When the Escalade passed Corporal Lagnese's vehicle, Corporal Lagnese identified the Defendant as the operator of the vehicle, and the CI was sitting in the front passenger street. Corporal Lagnese then observed the Escalade make a left-hand turn onto Ash Street at which time Corporal Lagnese began to follow the Escalade. Agent Hammerman advised Corporal Lagnese that the Escalade turned left onto Scott Street; and Corporal Lagnese parked his vehicle close to the intersection of Ash Street and Scott Street and lost sight of the Escalade. Agent Hammerman then advised Corporal Lagnese that the Escalade turned back onto Elder Street. Corporal Lagnese then witnessed the CI turn

from Elder Street on foot and walk onto Scott Street directly back to Corporal Lagnese's vehicle. The CI got into Corporal Lagnese's vehicle and handed Corporal Lagnese a bag containing suspected crack cocaine.

Corporal Lagnese then called Agent Hammerman and advised him the CI was in custody in his vehicle, and the CI provided drugs to Corporal Lagnese. Agent Hammerman testified that while he was conducting surveillance of the CI and the Defendant, he did not see any other individuals around the city block either on foot or in a vehicle. Additionally, he did not see the Defendant's car stop at any other location, nor did he see the CI make contact with any other person.

Agent Hammerman testified that after discussing the transaction with the other agents, there was a "negligible" period of time, several seconds, during which the CI was not under surveillance. Although Agent Hammerman testified that it is possible that there was enough time for a person to walk casually, bent over, pick something off the ground, and then continue to walk; however, this CI is a large individual, in excess of 300 pounds, who walks slowly. If the CI were to bend over and pick something up from the ground, it would have been a very obvious gesture.

After being advised that the CI was in the custody of Corporal Lagnese, Agent Hammerman met with Corporal Lagnese and the CI at predetermined location. Upon arrival, Corporal Lagnese handed Agent Hammerman a package of what was later determined to be crack cocaine[3]. The package contained five separate bags of the crack cocaine. During the trial, the CI identified the package containing five separate

---

[3] The Commonwealth and the Defendant agreed to the following stipulation that was read to the jury by this Court: "The drug evidence was properly handled during chain of custody, subject to proper testing procedures at the Pennsylvania State Police Crime Lab, drug evidence tested positive for cocaine base, a Schedule II controlled substance and the five bags had a total weight of 33.5 grams." (T.T. Day 2, pg. 8).

bags therein was indeed the crack cocaine that the Defendant had given to him in exchange for $1,500.00 on May 2, 2009. Agent Hammerman then conducted another strip search of the CI which yielded no additional controlled substances, US currency, paraphernalia or weapons. Thereafter, the CI was debriefed by the above agents. Agent Hammerman made the following determinations based upon conversations with the other surveillance agents and the CI: the team was able to maintain surveillance upon the CI; the CI met with the Defendant in the Defendant's vehicle; the Defendant and the CI drove around the block; a transaction occurred for $1,500.00 in exchange for one and one quarter ounces of crack cocaine; the CI did not meet with anyone else; the CI exited the Defendant's vehicle then met with Corporal Lagnese, who brought the CI to the meeting location.

The CI testified at trial regarding his involvement in the controlled purchase of crack cocaine from the Defendant. He testified that on March 2, 2009, he attempted to make contact with the Defendant early in the day in the presence of Agent Hammerman. After several unsuccessful attempts, the CI returned to his home on Cleveland Street in New Castle, Pennsylvania. While at home, the CI received a text message from the Defendant. While in the Escalade with the Defendant, the CI testified that he gave the Defendant the money provided to him by Agent Hammerman, and the Defendant gave the CI the drugs. The CI testified that there were no other individuals in the vehicle, and the entire transaction took approximately four to five minutes. The Defendant dropped the CI off where he had initially gotten into the Defendant's vehicle on Ray Street. The CI then got into Corporal Lagnese's vehicle after walking up the street. The CI testified that he did not see anyone else on the

street while he was walking to Corporal Lagnese's vehicle, he did not have contact with anyone on the street, nor did he ever stop to pick up anything from the street.

Once inside Corporal Lagnese's vehicle, the CI gave Corporal Lagnese the drugs he received from the Defendant. Corporal Lagnese then took the CI to another location where his clothing and body were searched again. Shortly thereafter, the CI received a call on his phone from the Defendant asking the CI if the drugs were all right. The CI told the Defendant that everything was fine, and he ended the call.

Agent Hammerman testified that normally an informant provides his own written statement, but the CI in the instant matter does not read or write the English language well so the CI communicated his statement to Agent Hammerman and Agent Geraci during the meeting after the transaction with the Defendant, and the statements were then transcribed. Both agents created the statement contemporaneously. The CI was able to print his name at the bottom of the statement. After identifying the statement at trial, the CI indicated that was the statement he provided to Agent Hammerman; and the CI signed the statement after Agent Hammerman read it back to him.

Agent Hammerman also testified regarding the lack of recording surveillance used in the transaction. Agent Hammerman testified that he had been using a key fob for a vehicle as a recording device, but information had leaked regarding what type of device the agents had used. Additionally, the CI did not have a vehicle that day, so Agent Hammerman thought it would look suspicious for the CI to have a key fob hanging off his person. Additionally, an audio and video recording device could have been placed upon the CI, but Agent Hammerman testified that he was concerned that it would have been spotted. Agent Hammerman also testified that in the past, Chief

Salem would carry a camera while on the street and take pictures, but since he works within the City of New Castle, many people know him. Agent Hammerman was afraid that having Chief Salem take pictures could compromise the operation.

Several months after this controlled purchase, in approximately May 2009, the agents working this case conducted a "round up," during which all individuals were arrested. A press release was issued and photographs were published of the individuals that were arrested in the case. The CI was included in the round up, so Agent Hammerman did not utilize him to make any other purchase; however, he did periodically keep in contact with the CI. In exchange for the CI's cooperation in this transaction, he was subject to a $30,000.00 non-monetary bond at the time of his arraignment for the charges resulting from an investigation by Agent Hammerman. This non-monetary bond is favorable to those in the same circumstances as the CI. The CI was later arrested on February 4, 2011 after a search warrant was executed on his property that recovered crack cocaine, $7,000.00 in cash, scales and baggies, assault rifle ammunition, and prescription medication not prescribed to him; however, Agent Hammerman was personally unaware of this. The CI testified that following the search warrant he fled the Commonwealth and went to Mississippi. After being arrested again, the CI testified that he negotiated a plea agreement that if he testified against the Defendant in the instant case, he would get a favorable plea offer from the Commonwealth.

The Defendant's first assertion in his Post Verdict Motion is that the Commonwealth of Pennsylvania failed to introduce sufficient evidence to establish the material elements of the crimes beyond a reasonable doubt. The Defendant points to a

number of matters the Commonwealth was unable to prove beyond a reasonable doubt. As stated above, the Defendant was convicted of Possession of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(16), Possession with the Intent to Deliver a Controlled Substance pursuant to 35 P.S. § 780-113(a)(30), Delivery of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(30), and Criminal Use of a Communication Facility pursuant to 18 Pa.C.S.A. § 7512.

"To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that [the defendant] knowingly or intentionally possessed a controlled substance without being properly registered to do so under the Act." Comm. v. Brown, 48 A.3d 426, 430 (Pa. Super. 2012). The Defendant was also charged with possession of a controlled substance with the intent to deliver; since no hand to hand transaction was observed, the Commonwealth must additionally prove "that [the defendant] possessed the controlled substance with the intent to manufacture, distribute, or delivery it." Id. Since the Defendant was not found with crack cocaine on his person, the Commonwealth was required to establish that the Defendant had constructive possession of the crack cocaine. See Comm. v. Kirkland, 831 A.2d 607, 611 (Pa. Super. 2003).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances."

Comm. v. Parker, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations omitted).

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

11

Here, the Defendant challenges the Commonwealth's ability to prove the Defendant had construction possession of the crack cocaine. The Defendant argues this by pointing to the following concessions by the Commonwealth's witnesses: (1) neither Agent Hammerman nor Corporal Lagnese saw the Defendant possess any controlled substance; (2) no officer could observed the CI enter the Defendant's Escalade; (3) no officer observed a hand-to-hand transaction between the CI and the Defendant; (4) Corporal Lagnese did not witness when or where the CI exited the Defendant's Escalade; and (5) there is no forensic evidence on the bag containing the crack cocaine to establish that the Defendant had possession of the contraband. However, after review of the entire testimony, this Court finds that the Commonwealth provided sufficient evidence to support the Defendant's convictions.

The Commonwealth presented evidence to establish that on March 2, 2009, the Defendant made contact with the CI by text message via a cellular telephone to organize a drug deal. The CI arranged with the Defendant that he was going to purchase one and one quarter ounces of crack cocaine from the Defendant in exchange for $1,500.00. The CI was strip searched prior to meeting with the Defendant, and no drugs, contraband, currency, or paraphernalia were found on his person. The CI was then provided with $1,500.00 and Agent Hammerman dropped the CI off at the meeting location. The CI was observed walking up the street, then in the car with the Defendant. No other individuals were seen in the car with the Defendant and the CI. The CI was then observed on foot turning a cornering, and he walked directly into Corporal Lagnese's vehicle. Once in Corporal Lagnese's custody, the CI handed Corproal Lagnese one and one quarter ounces of crack cocaine separated into five smaller bags,

which were given to him by the Defendant in exchange for $1,500.00. The CI was once again strip searched and no other drugs, contraband, currency, or paraphernalia were found on his person. The Defendant called the CI minutes later to confirm the CI was satisfied with the transaction. Although the CI was not continuously observed for the entire transaction, the officers reasonably concluded the time during which they lost surveillance was negligible. Under the totality of the circumstances, the Commonwealth sufficiently proved the Defendant had constructive possession of the crack cocaine.

Additionally, the Defendant was convicted of possession of a controlled substance with the intent to deliver pursuant to 35 P.S. § 780-113(a)(30). "The crime of possession of a controlled substance with the intent to deliver requires the Commonwealth to prove an additional element: that [the defendant] possessed the controlled substance with the intent to manufacture, distribute, or deliver it." Comm. v. Brown, 48 A.2d 426, 430 (Pa. Super. 2012). In order to prove a defendant had the intent to deliver, "[t]he trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case." Kirkland, 831 A.2d at 611. The Superior Court explained, "[f]actors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." Id.

In the instant case, the Commonwealth established that the Defendant constructively possessed one and one quarter ounces of crack cocaine with the intent to deliver. The Defendant organized an exchange with the CI at a specific location. The Defendant in his Escalade picked up the CI, who was on foot. The Defendant and the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

13

CI alone drove around a block, and the Defendant dropped off at CI approximately at the same location he was picked up. The crack cocaine was transferred to the CI in one large plastic bag with five smaller plastic bags containing approximately equal amounts contained in the large bag in exchange for $1,500.00. The transaction did not occur in open, but was seemingly concealed while driving alone in the Defendant's vehicle. Additionally, the Defendant called the CI after the transaction to ensure the CI was satisfied with the crack cocaine. This evidence is sufficient to show that the Defendant exercised conscious dominion over the crack cocaine.

The Defendant was also convicted of delivery of a controlled substance pursuant to 35 P.S. § 780-113(a)(30). Under this subsection, it is unlawful for a defendant to manufacture or deliver a controlled substance by a person not registered to do so. "Delivery" is defined as "the actual, constructive or attempted transfer from one person to another of a controlled substance." 35 P.S. § 780-112. "Transfer is not defined in the Act; however, taking the commonly accepted meaning of the word, as we must ... it means '[t]o convey or remove from one ... person to another[.]" Comm. v. Cameron, 372 A.2d 904 (Pa. Super. 1977). Thus, "all that is necessary is that the transfer be between two people." Comm. v. Metzger, 372 A.2d 20, 22 (Pa. Super. 1977).

In the instant case, the Commonwealth presented evidence that the CI participated in a controlled purchase of crack cocaine from the Defendant. The CI was strip searched immediately before the transaction and given $1,500.00. The CI met only with the Defendant in the Defendant's vehicle. The CI was under surveillance for the entire time, but for a negligible few moments. Immediately after exiting the Defendant's vehicle, the CI told Corporal Lagnese that he purchased the crack cocaine

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

14

from the Defendant in exchange for $1,500.00. The CI also testified to the same. As stated above, the Commonwealth need only to prove that a defendant actually transferred a drug to another. Considering the totality of the evidence provided by the Commonwealth, the Commonwealth sufficient proved the Defendant transferred crack cocaine to the CI. As a result, the Commonwealth provided sufficient evidence to establish the Defendant is guilty of delivery of a controlled substance.

The Defendant was lastly convicted of criminal use of a communication facility pursuant to 18 Pa.C.S.A. § 7512. The Superior Court in Comm. v. Moss, 852 A.2d 374, 381 (Pa. Super. 2004), explained, "[T]he Commonwealth must prove beyond a reasonable doubt that: (1) [defendant] knowingly and intentionally used a communication facility; (2) [defendant] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony has occurred." The pertinent inquiry is not to determine if a defendant used a communication device, but to determine if he used that communication device to facilitate the underlying felonies. Id.

In the instant case, the Commonwealth has provided sufficient evidence to establish that the Defendant knowingly and intentionally used a communication facility, a telephone, to facilitate the underlying felonies above. First, the record reflects that the Defendant set up the drug transaction via a text message, which the CI reported to Agent Hammerman immediately thereafter. Next, the CI informed the Defendant via telephone that he was "around the corner" before the Defendant picked the CI up in his vehicle. Following the transaction, the Defendant made a telephone call to the CI to ensure the CI was satisfied with the drugs. As a result of these facts, the Defendant set up the drug transaction with the CI via a communication device, a telephone. The CI

15

informed the Defendant of his location via a telephone call. And following the transaction, the Defendant used the communication facility to ensure the sale was satisfactory. This evidence, viewed in the light most favorable to the Commonwealth, is sufficient to support the conviction of the Defendant of criminal use of a communication facility.

Based upon the above, the Commonwealth provided sufficient evidence to prove every element of the crimes of which the Defendant was convicted. The Defendant is therefore not entitled to a new trial on this basis.

Next, the Defendant argues the instant Motion that his convictions were against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Lewis, 911 A.2d 558, 565 (Pa. Super. 2006). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." Id. Such a challenge questions which evidence is to be believed. Id. (citing Commonwealth v. Hunzer, 868 A.2d 498, 507 (Pa. Super. 2005)). For the reasons set forth below, this Court finds the evidence presented by the Commonwealth to be credible and trustworthy; as a result, the verdict was not against the weight of the evidence presented.

The Defendant argues the verdict is against the weight of the evidence because (1) no police officer witnessed a hand-to-hand transaction of the crack cocaine from the Defendant to the CI; (2) the CI's testimony was not credible because of his criminal history; (3) the CI was not credible because he was unable to remember numerous

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

16

facts during cross-examination; and (4) the CI's testimony that incriminated the Defendant was the result of the Commonwealth's leading questions. First, although no hand-to-hand transfer of drugs was witnessed between the Defendant and the CI, the Commonwealth is permitted to prove the entirety of its case against the Defendant with circumstantial evidence. See Comm. v. Bowen, 55 A.3d 1254, 1260 (Pa. Super. 2012). As stated above, the Commonwealth presented sufficient evidence to support the Defendant's convictions; the trier of fact is free to believe all or none of such evidence to determine credibility. It is inconsequential that the officers did not observe a hand-to-hand transfer of the crack cocaine; the Commonwealth is permitted to prove every element of a crime by means of wholly circumstantial evidence. The jury was free to believe that circumstantial evidence.

Next, the Defendant argues that the testimony of the CI was not credible or trustworthy due to his criminal history. During the trial, the CI was extensively questioned regarding his criminal history and previous charges. Additionally, the jury was provided with testimony that the CI became involved with the Office of the Attorney General of Pennsylvania following an arrest. The jury was permitted to weigh such evidence against his testimony. It is within the discretion of the jury to believe any or all of the CI's testimony.

The Defendant also asserts that the CI was not credible because he failed to remember facts about which he was questioned. The Defendant argues that because the CI was unable to recall certain facts, "to give any credit to the CI's testimony regarding the events of a single night approximately three and one-half yeas earlier does not merely shock one's sense of justice, it shocks one's sense of basic human

intelligence." Def. Brief, pg. 5. "Questions concerning inconsistent testimony and improper motive go to the credibility of the witness." Comm. v. DeJesus, 860 A.2d 102, 107 (Pa. 2004). "[W]here evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." Comm. v. Farquharson, 354 A.2d 545 (Pa. 1976).

Here, the testimony of the CI regarding the delivery of crack cocaine and the testimony of the officers were not contradictory. The CI's testimony supported the officer's recollection of the events. The CI's testimony was consistent as to all crucial events surrounding the Defendant's charges. As such, the resulting verdict cannot be said to be pure conjecture. The jury was free to weight and reject the questions of trial counsel regarding the CI's credibility. As a result, the jury's credibility determination will not be disturbed.

Lastly, the Defendant argues that the verdict was against the weight of the evidence because the CI's testimony that incriminated the Defendant was the result of the Commonwealth's leading questions. The Supreme Court of Pennsylvania explained in Comm. v. Reed, 990 A.2d 1158, 1170 (Pa. 2010), "[T]rial courts maintain discretionary control over the questioning of witnesses[.] Questions calling for a 'yes' or 'no' answer are not necessarily leading; rather, the litmus is the degree of the suggestiveness contained in the questioning." (internal citations omitted). Our Supreme Court defined a leading question as "one which puts the desired answer in the mouth of the witness." Id. (citations omitted).

During the CI's direct examination, counsel for the Defendant objected to the form of the Commonwealth's questions on three occasions. (T.T. Day 2. pgs. 144, 161, 168). The first and third times, the Defendant's counsel objected to a series of questions; and this Court sustained the Defendant's objections. The second time, Defendant's counsel objected to a single question, which the Commonwealth voluntarily rephrased. Upon reviewing the direct testimony of the CI, the Commonwealth was indeed asking leading questions. The Defendant's counsel properly objected, and this Court properly sustained the objections. The Commonwealth explained to the Court during a discussion at sidebar that the CI was not sophisticated, and she was trying to ask open-ended questions. As a result, the Court provided some leeway under the circumstances. See Comm. v. Deitrick, 70 A. 275 (Pa. 1908) ("The rule that a party calling a witness is not permitted to ask leading questions ... is [to be] liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness."). The Court did not find prejudice to the Defendant as a result of the Commonwealth's leading the CI. Moreover, there was sufficient evidence already on the record regarding the circumstances of the controlled purchase on the Defendant. Therefore, the verdict was not against the weight of the evidence presented; and the Defendant is not entitled to a new trial on this basis.

The Defendant next asserts in the instant Motion that the Commonwealth violated Brady v. Maryland, 83 S.Ct. 1194 (1963), in the following ways: (1) failing to disclose the Office of the Attorney General's internal protocol regarding the use of confidential informants; (2) failing to deliver the grand jury testimony of Agent

Hammerman at the conclusion of direct examination; (3) destroying and/or disposing of all of Agent Hammerman's handwritten material that he drafted during the course of the investigation after completing his affidavit of probable cause; and (4) failing to disclose the location of the strip searches.

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilty or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 S.Ct.1194. The Pennsylvania Supreme Court has held, "To prove a Brady violation, the defendant must show that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." Comm. v. Pagan, 950 A.2d 270, 291 (Pa. 2008). "The evidence purportedly suppressed must have been material to guilt. Evidence is material if there has been a reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different." Comm. v. Clark, 961 A.2d 80, 89 (Pa. 2008) (citations and quotation marks omitted).

"Brady does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments nor defenses." Comm. v. Chamberlain, 30 A.3d 381 (Pa. 2011) (internal quotation marks and citations omitted). Additionally, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." Comm. v. McGill, 832 A.2d 1014, 1019 (Pa. 2003). The "question is not whether the defendant would more likely than not have

received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Comm. v. Dennis, 17 A.3d 297, 308 (Pa. 2011) (quoting Kyles v. Whitley, 115 S.Ct. 1555 (1995)).

The Defendant argues that the Commonwealth's nondisclosure of the Office of the Attorney General's internal protocol regarding the use of confidential informants constituted a Brady violation. The Defendant asserts the nondisclosure "severely handicapped" his strategy and deprived him of additional defenses that could have affected the outcome of his case, including the CI's credibility and the validity of the Commonwealth's investigation. This is merely speculative, however. As stated above, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality. The Commonwealth's nondisclosure of the internal protocol regarding the use of confidential informants does not constitute a Brady violation.

The Defendant argues that the Commonwealth's failure to deliver the grand jury testimony of Agent Hammerman at the conclusion of direct examination constituted a Brady violation. The Defendant argues that Agent Hammerman's grand jury testimony was of utmost importance since he was one of three testifying witnesses during the trial. The Defendant asserts that Agent Hammerman's grand jury testimony could possibly contain statements contrary to those made during the trial; and those statements could be used to diminish Agent Hammerman's credibility. "Impeachment evidence which goes to the credibility of a primary witness against the accused is critical evidence and it material to the case[.]" Comm. v. Spotz, 47 A.3d 63, 84 (Pa. 2012) (citations omitted). This Court agrees that if the Commonwealth had suppressed such evidence, the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

Defendant would have an argument for a potential Brady violation. However, after scrutinizing the record, this Court finds no request for Agent Hammerman's grand jury testimony. As stated by our Supreme Court in Comm. v. Sneed, 45 A.3d 1096, 1116 (Pa. 2012), "The burden rests with the [defendant] to **prove, by reference to the record,** that evidence was withheld or suppressed by the prosecution." (emphasis in original) (internal quotation marks and citations omitted). As a result, the Defendant's assertion of a Brady violation is purely conjecture since he cannot prove the existence of the allegedly exculpatory evidence, or that such evidence was withheld by the prosecution. This assertion is insufficient to establish a Brady violation.

The Defendant argues that Agent Hammerman's destruction and/or disposal of all of his handwritten material that he drafted during the course of the investigation after completing his affidavit of probable cause constituted a Brady violation. The Defendant argues that by making those notes unavailable for defense counsel's inspection, the Defendant was divested of the opportunity to utilize potentially invaluable impeachment evidence. Similar to the above, the record does not reflect that the Defendant requested Agent Hammerman's handwritten notes. Because the Defendant cannot prove that such evidence was withheld by the prosecution, this assertion is insufficient to establish a Brady violation.

In the Defendant's last Brady claim, he argues that the Commonwealth's nondisclosure of the location where the CI was strip searched constituted a Brady violation. He asserts that because the Commonwealth's failed to provide defense counsel with the location of the strip searches, the Defendant was unable to challenge the accuracy and/or reliability of the testimony of the CI and Agent Hammerman with

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

respect to the searches. The Court does not find the location where the CI was strip searched to be material of his guilt. The Defendant had a full and fair opportunity to cross-examine both Agent Hammerman and the CI during the trial regarding the location of the strip searches. The Defendant does not need to have access to the location to investigate it for himself in order to challenge the reliability of Agent Hammerman or the CI's testimony on this matter. As a result, this assertion is insufficient to establish a Brady violation. Based upon the foregoing, the Defendant is not entitled to a new trial based upon any of the allegations of a Brady violation.

Next, the Defendant argues in the instant Motion that he is entitled to a new trial due to Agent Hammerman's referencing a "prior bad act" on cross-examination. The defense counsel asked the following question to Agent Hammerman on cross-examination: "And when you said that - - he was saying around the corner, was it your understanding that he was saying he was around the corner from the CI's house?" (T.T. Day 2, pg. 102). Agent Hammerman responded, "No. Well, we weren't even sure. He said the CI advised us that this was an area where they had done prior transactions. So we knew that's where to go." (T.T. Day 2, pg. 102). At that point, while at sidebar, defense counsel motioned for a mistrial on the basis that Agent Hammerman referenced a prior bad act of the Defendant. This Court denied defense counsel's motion.

Evidence of a prior bad act of a defendant's is generally inadmissible in a criminal trial. See. Pa.R.E. 404 (b)(3). A mistrial may be granted upon the wrongful admission of evidence of a defendant's prior bad act if its effect is to deprive the defendant of a fair trial.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

A mistrial is an "extreme remedy ... [that] ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defense of a fair trial." Comm. v. Vazguez, 412 Pa.Super. 184, 617 A.2d 786, 787-88 (1992) (citing Comm. v. Chestnut, 511 Pa. 169, 512 A.2d 603 (Pa. 1986), and Comm. v. Brinkley, 505 Pa. 442, 480 A.2d 980 (Pa. 1984)). A trial court may remove taint caused by improper testimony through curative instructions. Comm. v. Savage, 529 Pa. 108, 602 A.2d 309, 312-13 (Pa. 1992); Comm. v. Richardson, 496 Pa. 521, 437 A.2d 1162 (Pa. 1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. Richardson, 496 Pa. at 526-527, 437 A.2d at 1165. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instructive was appropriate. Id.

Comm. v. Manley, 985 A.2d 256, 266-67 (Pa. Super. 2009).

Upon having the court reporter read the question and answer to the Court and counsel at sidebar, this Court reasoned that to whom Agent Hammerman's answer referred was ambiguous. Agent Hammerman's answer could easily have been referred to the CI's prior transactions with others rather than with the Defendant. Agent Hammerman merely used the pronoun, "they" when referring to prior transactions. Since defense counsel was questioning Agent Hammerman about the CI during that time in his cross-examination, Agent Hammerman's answer could easily have referred to any other person, and not the Defendant. Moreover, Agent Hammerman merely answered the question as presented to him.

Although defense counsel reserved the right to request a curative instruction regarding Agent Hammerman's testimony, defense counsel did not request and this Court did not provide a curative instruction. Although juries are presumed to follow the instructions of the Court, see Comm. v. Simpson, 754 A.2d 1264, 1272 (Pa. 2000), it is

this Court's belief that under these circumstances, a curative instruction to the jury instructing them to disregard Agent Hammerman's answer would have been counter productive as it would have drawn more attention to the answer. Agent Hammerman's reference to a prior bad act was not of a nature that its unavoidable effect was to deprive the Defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. As such, Defendant is not entitled to a mistrial for Agent Hammerman's reference to a prior bad act.

Next, the Defendant argues in the instant Motion that he is entitled to a new trial on the basis that the Commonwealth failed to authenticate text messages prior to introducing testimony relating those text messages. "Authentication [of text messages] is a prerequisite to admissibility." Comm. v. Koch, 39 A.3d 996, 1005 (Pa. Super. 2011). If such messages are not authenticated, they constitute inadmissible hearsay, in violation of Pennsylvania Rules of Evidence 801[4] and 802[5].

"[A]uthentication of electronic communication, like other documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." Id. The Superior Court in Koch explained circumstantial evidence to consider that would corroborate the identity of the sender includes, *inter alia*, testimony from persons who sent or received the text messages or contextual clues in the text

---

[4] Pa.R.E. 801 defines hearsay as follows:
  (a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.
  (b) (b) Declarant. A "declarant" is a person who makes a statement.
  (c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
Pa.R.E. 801.

[5] Pa.R.E. 802 provides the following: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

messages themselves tending to reveal the identity of the sender. Id. If the improper admission of text message evidence could reasonably have contributed to the jury's verdict. Id. at 1007. For example, in Koch, the text message evidence proved to be a vital element of the Commonwealth's proof on the charges against the defendant such that the prejudicial effect of their improper admission was so pervasive in tending to show that the defendant took part in an illicit enterprise that the Superior Court could not find the trial court's error to be harmless. Id. The Superior Court found that under the circumstances of Koch, a new trial was warranted. Id.

In the instant case, this Court found adequate circumstantial evidence existed to establish the Defendant was the individual who sent the text message to the CI to arrange the drug transaction. During direct examination, the CI was recalling the events of March 2, 2009. After explaining that his attempts to call the Defendant in the presence of Agent Hammerman were unsuccessful, the CI recalled that when he returned home he received a text message. The following questions and answers occurred thereafter:

> Q: And do you remember what the text message was?
>
> A: He was like, well, what's up.
>
> Q: Do you know who sent you - - I'm sorry. Do you know what phone number the text message came from?
>
> A: No, ma'am.
>
> Q: But who did you think you were talking to?

(T.T. Day 2, pg. 144). At that point, defense counsel requested a sidebar where he objected to the introduction of the text message testimony. This Court overruled the

objection and permitted the Commonwealth to proceed questioning the CI about the text messages. When direct examination continued, the CI testified that when the Defendant would get a new telephone number, he would text it to the CI. When the CI received the new number, he would save it in his phone. When he received a new number from the Defendant, the CI would inform Agent Hammerman of that number. This circumstantial evidence is consistent with what the Superior Court explained in Koch. The recipient of the text messages, the CI, testified that the Defendant would contact him with a new phone number. This testimony tends to prove the Defendant was the sender of the text messages as it was consistent with his past behavior when contacting the CI. As a result, the text messages were properly authenticated. The Defendant is not entitled to a new trial under this argument.

Finally, the Defendant seeks to have this Court to modify his sentence as imposed on November 16, 2012 on the basis that the Commonwealth failed to provide the Defendant with reasonable notice of its intention to proceed under the mandatory term of imprisonment as set forth under 18 Pa.C.S.A. § 7508. The Defendant argues he should have been sentenced pursuant to the standard guidelines as set forth under 42 Pa.C.S.A. § 9721. Section 7508 sets forth the minimum penalties that apply to specific drug offenses. "[W]here a statute requires the Commonwealth to provide notice of its intent to seek a statutorily defined, minimum sentence, trial courts cannot impose such a sentence without the requisite notice." Comm. v. Vasquez, 744 A.2d 1280,1283 (Pa. 2000). Section 7508 mandates that the Commonwealth give "reasonable" notice of its intention to proceed under this section. 18 Pa.C.S.A. § 7508. Such notice shall be given "after conviction and before sentencing." Id. at 7508(b). Notice has been

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

considered to be reasonable under various circumstances. See Comm. v. Diamond, 945 A.2d 252, 257 (Pa. Super. 2008) (concluding one month notice prior to sentencing was reasonable); Comm. v. Saksek, 522 A.2d 70, 72 (Pa. Super. 1987) (concluding three days notice prior to sentencing constituted reasonable notice); Comm. v. Daniels, 656 A.2d 539, 542 (Pa. Super. 1995) (concluding notice was reasonable when given during plea negotiations); and Comm. v. Bell, 645 A.2d 211, 218 (Pa. 1994). (finding harmless error when the Commonwealth gave a defendant notice of its intention to seek the mandatory minimum sentence prior to trial).

In the instant case, the Commonwealth submitted to the Court during the Sentencing Hearing on November 16, 2012, that the Commonwealth has had direct conversations with defense counsel prior to trial regarding the imposition mandatory minimum sentence upon conviction. (T. pg. 5). Moreover, the Commonwealth recalls a conversation with defense counsel prior to trial in which defense counsel asked the Commonwealth would consider waiving the mandatory minimum for a guilty plea. (T. 22). The Commonwealth specifically recalls a statement made my defense counsel that the Defendant could not accept a plea because he was on federal supervision. (T. 23).

Additionally, although a defendant has a right to sentenced within 90 days of conviction, the sentencing was expedited by defense counsel. The Court informed the Defendant that it would grant a continuance it he believed there is prejudice to him. Defense counsel refused to request a continuance on the basis that to request a continuance that day would provide the Commonwealth with an opportunity to inform the Defendant of its intention to pursue the mandatory minimum sentence. Such behavior, the Defendant argues, is a manipulation of the statute. The Commonwealth

responded that the Deputy Attorney General would return on the morning of Monday, November 19, 2012 if it would serve the Defendant. Considering the above, this Court sentenced the Defendant to the mandatory minimum provided by 18 Pa.C.S.A. § 7508. As stated above, informing a defendant of the intention to impose the mandatory minimum sentence prior to the start of trial and during plea negotiations is considered to be reasonable notice. It is this Court's belief that such notice was given in the instant case. As a result, the Court properly sentenced the Defendant to the mandatory minimum provided by 18 Pa.C.S.A. § 7508.

Based upon the foregoing, the Defendant's Post Verdict Motion is DENIED in its entirety.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2013 APR 25 P 12: 06

29

HELEN I. MORGAN
PRO AND CLERK

COMMONWEALTH OF
PENNSYLVANIA,

vs.

WALTER KEVIN MOORE, III,

Defendant.

: IN THE COURT OF COMMON PLEAS
:
: LAWRENCE COUNTY, PENNSYLVANIA
:
: NO. 692 of 2009, C.R.
:
: OTN: K894083-1
:

## APPEARANCES

FOR THE COMMONWEALTH:

Maureen Sheehan-Balchon, Esquire
Deputy Attorney General
Drug Strike Force Section
105 Independence Blvd.
Butler, PA 16001

FOR THE DEFENDANT:

Bradley G. Olson, Jr., Esquire
312 North Jefferson Street
2nd Floor
New Castle, PA 16101

## OPINION

Piccione, J.

August 5, 2013

This Opinion pursuant to Pa.R.A.P. 1925(a) in support of its Order of Court and Opinion dated April 25, 2013, which denied the Post Verdict Motion filed by the Defendant, Walter Kevin Moore, III (hereinafter, the "Defendant"). The Court received the Defendant's Concise Statement of Matters Complained of on Appeal (hereinafter, the "Concise Statement") on May 31, 2013. The Defendant asserts in his Concise Statement that this Court erred in the following ways: (1) denying Defendant's *pro se* Motion to Dismiss; (2) not allowing the Defendant to proceed with a Motion for Habeas Corpus where he waived his preliminary hearing; (3) allowing Agent Jason Hammerman to read a statement of consent allegedly signed by the confidential informant over the objection of defense counsel during the hearing regarding the

Defendant's omnibus pretrial motion; (4) allowing Agent Jason Hammerman to read a statement of consent allegedly signed by the confidential informant (hereinafter, the "CI") over the objection of defense counsel during the hearing regarding the Defendant's omnibus pretrial motion where the CI did not testify as to whether or not he was coerced into signing the document; (5) in denying the Defendant's Motion in Limine and failing to suppress text messages without authenticating them; (6) in denying the Defendant's Motion in Limine and failing to limit the testimony of witnesses to personal observations; (7) in denying the Defendant's Motion in Limine and failing to mandate that the Commonwealth disclose to defense counsel the internal operating procedures with regards to the use of the CI; (8) failing to strike a juror where the juror was the wife of a retired police chief; (9) failing to sustain defense counsel's continuing objection that the Commonwealth was leading its witnesses; (10) allowing the CI to be dressed in street clothes, as opposed to prison garb, where the CI was incarcerated at the time of trial; (11) sustaining the Commonwealth's objection that Agent Hammerman police report could not be provided to Corporal Lagnese during cross examination in order to refresh his recollection; (12) denying Defendant's oral motion for judgment of acquittal of all charges; (13) denying Defendant's motion to admit Defense Exhibits 2, 3, 4, 7, 8, 9, 10, and 11; (14) denying Defendant's Post Verdict Motion because the Defendant's convictions were against the weight of the evidence; (15) denying the Defendant's Post Verdict Motion because the Defendant's convictions were based upon insufficient evidence; (16) denying the Defendant's Post Verdict Motion because the Defendant's convictions resulted from a violation of Brady v. Maryland, 83 S.Ct. 1194 (1963), when the Defendant was refused access to the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2

Attorney General's internal protocol regarding the use of the CI; (17) denying the Defendant's Post Verdict Motion because the Defendant's convictions resulted from a violation of <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963), because defense counsel was not granted access to Agent Hammerman's grand jury testimony; (18) denying the Defendant's Post Verdict Motion because the Defendant's convictions resulted from a violation of <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963), because Agent Hammerman destroyed his investigatory notes; (19) denying the Defendant's Post Verdict Motion because the Defendant's convictions resulted from a violation of <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963), because the Commonwealth failed to provide defense counsel with any information regarding the debriefing location of the CI relative to his strip-searches; (20) denying the Defendant's Post Verdict Motion because the Defendant's was deprived of a fair trial when from Agent Hammerman referenced a prior bad act; (21) denying Defendant's Post Verdict Motion because the Defendant was deprived of a fair trial when the Commonwealth introduced text messages without properly authenticating them; and (22) denying the Defendant's Post Verdict Motion when the Commonwealth failed to provide defense counsel with reasonable notice of its intention to proceed pursuant to 18 Pa.C.S.A. § 7508.

The Defendant first asserts that this Court erred in denying the Defendant's pro se Motion to Dismiss. The Defendant was not represented by counsel on August 17, 2011 when he filed pro se Motion to Dismiss. In the Motion to Dismiss, the Defendant's first argument was that this Court did not have subject matter or in personam jurisdiction. This claim is without merit. The Commonwealth produced evidence to prove that the Defendant committed the crimes of which he was

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

3

committed in the City of New Castle, Lawrence County. Additionally, this Court was competent to hear the evidence of the crimes in this case. As a result, the Defendant's challenge to subject matter jurisdiction was without merit.

The Defendant also alleged in the pro se Motion to Dismiss that this Court was without in personam jurisdiction. This allegation is similarly without merit. The Defendant's address as contained in the Court's file is listed as "213 E. Fairmont Ave.; New Castle, PA 16101." The Defendant's residence is in the City of New Castle, Lawrence County. As a result, this Court sufficiently has in personam jurisdiction over the Defendant.

The Defendant next argued in the pro se Motion to Dismiss that "Water Kevin Moore, III" is not his legal name. The Court could not find any law to support the allegation that this is a basis upon which the charges against the Defendant should be dismissed. The Commonwealth had sufficient evidence contained in the information and affidavit of probable cause to identify the Defendant as the individual who committed the crimes charged against him. As a result, this is allegation is similarly without merit.

Next, the Defendant argued in the pro se Motion to Dismiss that he has a constitutional right to receive an indictment or presentment by an investigating grand jury, and he was deprived of that right. Upon review of the record, the investigating grand jury did return a presentment and recommendation of charges to be filed against him. The Presentment was attached to the affidavit of probable cause that was filed in this Court. As a result, this allegation is also without merit.

Next, the Defendant argued in the pro se Motion to Dismiss that a waiver of appearance at arraignment was entered without his consent. "It is well settled that an arraignment is intended to fulfill three primary purposes: to make a definite identification of the accused, to give the accused notice of the charges against him and to give the accused the opportunity to enter a plea." Comm. v. Andrews, 426 A.2d 1160, 1162 (Pa. Super. 1981). An arraignment may be waived if the defendant and his counsel sign and file a waiver of appearance at arraignment that acknowledges that the defendant "(a) understands the nature of the charges; (b) understands the rights and requirements contained in paragraph (C) of this rule; and (c) waives his or her right to appear for arraignment." Pa.R.Crim.P. 571(D)(2).

A waiver of arraignment was filed in this Court on August 4, 2009. The waiver of arraignment was filed by the Defendant's then counsel of record. The waiver contains both the Defendant's and his attorney's signatures. Additionally, the waiver states that the Defendant "received notice to appear for arraignment scheduled for August 4, 2009, and being represented by counsel, who has fully advised me of all my rights relative to this criminal proceeding, does hereby waive arraignment in conformity with the Rules of Criminal Procedure and enters a plea of 'Not Guilty' to the charges indicated above." This Court finds the waiver of arraignment to be in conformity with the Rules of Criminal Procedure. Additionally, the wavier contains the Defendant's signature. As a result, the waiver of arraignment was not fraudulently filed without his consent. Therefore, this allegation is without merit.

Next, the Defendant argued in the pro se Motion to Dismiss that his Constitutional right to confront his accused was violated when the CI did not testify at

his preliminary hearing. At the present posture of this case, the trial has occurred and a jury convicted the Defendant of the charges filed against him. Although the CI did not appear during the preliminary hearing, the CI did appear in Court to testify during the trial. The Defendant had a full and fair opportunity to confront his accused through cross-examination during the trial. Therefore, any defect in the preliminary hearing is harmless because the evidence has already been submitted to a jury. Comm. v. Ruza, 511 A.2d 808 (Pa. 1986).

Next, the Defendant argues in the pro se Motion to Dismiss that he had not received any discovery materials. Upon review of the record, the Court finds that the Defendant had not filed any request for discovery or any discovery motion. The Defendant makes no allegation that he attempted to seek the evidence the Commonwealth had against him. Before the date of the hearing on the pro se Motion to Dismiss, the Defendant indicated to the Court that he was seeking of continuance in order to obtain competent counsel. Six days after hearing before the President Judge Dominick Motto, the Defendant's trial counsel entered his appearance. The Defendant's trial counsel sought and received discovery on the Defendant's behalf. As a result, this error was harmless.

The Defendant's penultimate argument in the pro se Motion to Dismiss is that he was denied his Eighth Amendment right to bail. Upon the filing of the criminal complaint, the Defendant's bail was set to $100,000.00. The Defendant argues that this is amount was excessive. The court found this amount to be appropriate given the seriousness of the charges and the other facts considered. The Defendant has

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

already been convicted and sentenced. The Court is without an available remedy for the Defendant if bail were deemed to have been excessive.

Lastly, the Defendant argues in the pro se Motion to Dismiss that the criminal complaint was fraudulent paperwork filed by the Commonwealth. The Defendant argues that the criminal complaint does not contain an official seal. Upon review, the Court notes that an official seal does appear in the criminal complaint. As a result of the above analysis, this Court did not err by denying the Defendant's pro se Motion to Dismiss.

For analysis of the issue herein numbered two (2), the Superior Court is directed to pages two (2) through three (3) of the Opinion dated May 4, 2012.

The Defendant's third allegation that this Court erred at the Defendant's hearing regarding the Omnibus Pretrial Motion when the Honorable John Hodge permitted Agent Hammerman to read a statement of consent allegedly signed by the confidential informant over the objection of defense counsel on the basis of hearsay. During the hearing on the Defendant's Omnibus Pretrial Motion, the Commonwealth asked its witness, Agent Hammerman, to read the CI's statement of consent to allow the Commonwealth to make recorded phone calls and communications between the CI and the Defendant. At that point, the Defendant objected to Agent Hammerman's reading the CI's statement on the basis of hearsay. The Honorable John Hodge overruled the objection and permitted Agent Hammerman to read the CI's statement of consent into the record.

Rule 801 of the Pennsylvania Rules of Evidence provides that hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

7

hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801 (c)(1) and (2). Hearsay is inadmissible except as provided by the Pennsylvania Rules of evidence, by statute, or by rule prescribed by the Pennsylvania Supreme Court. Pa.R.E. 803. "The hearsay rule provides that evidence of a declarant's out-of-court statements is generally inadmissible because such evidence lack guarantees of trustworthiness fundamental to the Anglo-American system of jurisprudence." Comm. v. Chamberlain, 731 A.2d 593, 595 (Pa. 1999).

Here, the CI's statement does not constitute hearsay. The CI's statement of consent was offered to explain a course of conduct performed by the police and the Office of the Attorney General of Pennsylvania to make recordings of telephone communications. "[A]n out-of-court statement offered to explain a course of conduct is not hearsay." Comm. v. Cruz, 414 A.2d 1032, 1035 (Pa. 1980). These out-of-court statements are not offered for the truth of the matter asserted; rather, they are being offered "merely to show the information upon which police acted." Comm. v. Sneed, 526 A.2d 749, 754 (Pa. 1987). Agent Hammerman was being questioned, and testifying to the procedures he took before recording telephone conversations. This testimony constituted course of conduct testimony, which is admissible nonhearsay. As a result, the Defendant's objection lacked merit and this Court did not err in overruling the Defendant's objection.

The Defendant's fourth allegation is that this Court erred in allowing Agent Hammerman to read a statement of consent allegedly signed by the CI over the objection of defense counsel during the hearing regarding the Defendant's omnibus pretrial motion where the CI did not testify as to whether or not he was coerced into

signing the document. This allegation is unfounded. The Defendant was not prejudiced by this pretrial matter. The CI was available during the trial and was effectively cross-examined by defense counsel. "If ... it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation [during a pretrial hearing] would have been harmless." Comm. v. Ruza, 511 A.2d 808 (Pa. 1986). Such is the case here. Since the Defendant had a full opportunity to cross-examine the CI at trial, this Court did not err in allowing Agent Hammerman to read a statement of consent signed by the CI.

The Defendant's fifth allegation is that this Court erred in denying its Motion in Limine and failing to suppress text messages that were not authenticated. This Court addressed the authentification of the text messages presented during the trial in its Opinion dated April 25, 2013. For this analysis, the Superior Court is directed to pages twenty-five (25) through twenty-seven (27) of the Opinion dated April 25, 2013.

The Defendant's sixth allegation is that this Court erred in denying the Defendant's Motion in Limine and failing to limit the testimony of witnesses to personal observations. The Defendant's Motion in Limine requested that this Court instruct witnesses to testify in conformance with the Pennsylvania Rules of Evidence. Rule 602 of the Pennsylvania Rules of Evidence provides in relevant part, "A witness may testify to a matter if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter[.]" Pa.R.E. 602. The proper method to challenge a witness's testimony is to object if a witness is asked a question of which the witness has no personal knowledge. Each party is already required to comply with the Rules of Evidence. The Defendant's Motion in Limine was redundant.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

9

Additionally, the Defendant was permitted to object to any testimony at any point as permitted by law. As a result, this Court did not err in denying the Defendant's Motion in Limine.

For analysis of the issue herein numbered seven (7), the Superior Court is directed to page twenty-one (21) of the Opinion dated April 25, 2013.

The Defendant's eighth allegation is that this Court erred failing to strike a juror where the juror was the wife of a retired police chief. The Court notes for the Superior Court that the Defendant did not request the *voir dire* to be transcribed. As a result, this Court is unable to reference specific justification noted on the record at the time of jury selection. However, this Court refused to strike a juror whose husband was a retired police chief because there was no showing of bias or prejudice.

> A prospective juror should be excused for cause in two situations: the first is where the prospective juror indicates by his answers that he will not be an impartial juror .... The second is where, irrespective of the answers given in *voir dire*, the court should presume the likelihood of prejudice on the part of a prospective juror because the potential juror has a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims or witnesses.

Comm. v. Stamm, 429 A.2d 4, 7 (Pa. Super. 1981) (internal quotation marks omitted). Here, the juror did not have a close relationship to any party, counsel, victims or witnesses in the instant case. Therefore, the Court could not presume bias. Additionally, the juror indicated that she could be an impartial juror irrespective of her husband's former position. Because the juror indicated that she could be an impartial juror, without bias or prejudice, the Court properly refused to strike her from the jury.

For analysis of the issue herein nine (9), the Superior Court is directed to pages eighteen (18) through nineteen (19) of the Opinion dated April 25, 2013.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

The Defendant's issue herein numbered ten (10) alleges this Court erred by allowing the CI to be dressed in street clothes, as opposed to prison garb, where the CI was incarcerated at the time of trial. This contention is not supported by the laws of this Commonwealth. This Court finds no prejudicial effect by allowing the CI to appear before the jury in street clothing. The Defendant's counsel extensively questioned the CI about his prior arrests and his current residence in prison. The Defendant's presumption of innocence was in no way affected by the CI's attire. Moreover, the Court did not find it necessary to keep the CI in prison garb with shackles in order to maintain order. See Comm. v. Mayhugh, 336 A.2d 379, 381-82 (Pa. Super. 1975). As a result, this Court did not err in permitting the CI to appear at the trial in civilian clothing.

Next, in issue herein numbered eleven (11), the Defendant alleges this Court erred in sustaining the Commonwealth's objection that Agent Hammerman's police report could not be provided to Corporal Lagnese during cross examination in order to refresh his recollection. Pennsylvania Rule of Evidence 612 provides in relevant part, "A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying." Pa.R.E. 612(a). Before a witness may refresh his recollection while testifying, "The proponent must establish that: 1) the witness's present memory is inadequate; 2) the writing or other aid could refresh the witness's memory and 3) the writing or other aid actually refreshes the witness's memory." Comm. v. Montgomery, 687 A.2d 1131, 1137 (Pa. Super. 1996).

In the instant case, defense counsel was cross-examining Corporal Lagnese. Defense counsel asked, "You certainly have seen Agent Hammerman's report that

was generated two weeks later on March 16 of 2009, correct?" (N.T. Trial Day 3, pg. 46). Corporal Lagnese answered, "Yes." (N.T. Trial Day 3, pg. 46). Defense counsel then requested Corporal Lagnese be provided with a copy of Agent Hammerman's report. (N.T. Trial Day 3, pg. 47). The Commonwealth objected at this point on the basis that defense counsel has not established that Corporal Lagnese's memory had failed. (N.T. Trial Day 3, pg. 47). This Court sustained the Commonwealth's objection on that ground. Defense counsel did not establish a proper foundation at that time in order to permit Corporal Lagnese to have his recollection refreshed. Merely requesting that Corporal Lagnese be provided with a copy of Agent Hammerman's report is wholly inadequate to establish that his memory was inadequate. As a result, this Court did not err in sustaining the Commonwealth's objection to prohibit Corporal Lagnese from using Agent Hammerman's police report to refresh his recollection.

The Defendant's twelfth allegation is that this Court erred in denying Defendant's oral motion for judgment of acquittal of all charges. Following the Commonwealth's case in chief, defense counsel made an oral motion at side bar for a judgment of acquittal. Defense counsel argued that the Commonwealth had not met their burden with respect to all charges. Defense counsel further argued that because each agent admitted that they lost surveillance of the CI for a time during the controlled purchase, no reasonable person could conclude that the Defendant is guilty of the charges against him. This Court denied the Defendant's motion for judgment of acquittal. (N.T. Trial Day 3, pg. 84).

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the

Commonwealth has failed to carry its burden regarding that charge." Comm. v. Foster, 33 A.3d 632, 635 (Pa. Super. 2011). The Superior Court is directed to pages two (2) through sixteen (16) of the Opinion dated April 25, 2013 for analysis of the sufficiency of the evidence. Because this Court concluded, and the jury later decided, the Commonwealth had met its burden with respect to all charges, the Court did not err in denying the Defendant's oral motion for judgment of acquittal.

The Defendant's thirteenth allegation is this Court erred in denying Defendant's motion to admit Defense Exhibits 2, 3, 4, 7, 8, 9, 10, and 11 as contained in Defendant's Exhibit F. The Defendant's only witness was Mr. Vincent Martwinski (hereinafter, "Martwinski"). Martwinski contracted with the Defendant to provide private investigator services, as he is licensed as such. Martwinski's services included taking a number of photographs in the area of Ray, Elder, Ash and Scott Streets in July 2012. (N.T. Trial Day 3, pg. 86-7). Martwinski testified during the trial regarding a number of those photographs. Following Martwinski's testimony, the Defendant moved for the admission of Defendant's Exhibit F into evidence. Defendant's Exhibit F contained twelve photographs numbered sequentially one through twelve. The Commonwealth objected to the admission of numbers 2, 3, 4, 7, 8, 9, 10, and 11, arguing that Martwinski failed properly authenticate them. This Court admitted photographs numbered 1, 5, 6, and 12, and refused to admit numbers 2, 3, 4, 7, 8, 9, 10, and 11 for failure to authenticate. The Defendant now argues this was in error.

Pennsylvania Rule of Evidence 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

13

claims." Pa.R.E. 901(a). In order to satisfy this standard, the witness must testify with sufficient knowledge that the matter is what it is claimed to be. Pa.R.E. 901(b)(1). "To authenticate photographs, ... Pennsylvania courts have always and without exception held that the photograph ... must be authenticated through testimony from a witness with personal knowledge who can testify that it fairly and accurately represents that which it purports to depict." Comm. v. McKellick, 24 A.3d 982, (Pa. Super. 2011) (internal quotations marks and citations omitted).

In the instant case, Martwinski only referred to photographs numbered 1, 5, 6, and 12. Martwinski testified to the accuracy of only those four photographs. Because photographs numbered 2, 3, 4, 7, 8, 9, 10, and 11 were not so much as mentioned, the Defendant failed properly authenticate those photographs. As such, the Court did not err when it failed to admit photographs numbered 2, 3, 4, 7, 8, 9, 10, and 11 into evidence.

For analysis of the issue herein numbered fourteen (14), the Superior Court is directed to pages sixteen (16) through eighteen (18) of the Opinion dated April 25, 2013.

For analysis of the issue herein numbered fifteen (15), the Superior Court is directed to pages two (2) through sixteen (16) of the Opinion dated April 25, 2013.

For analysis of the issues herein number sixteen (16) through nineteen (19), the Superior Court is directed to pages nineteen (19) through twenty-three (23) of the Opinion dated April 25, 2013.

For analysis of the issue herein numbered twenty (20), the Superior Court is directed to pages twenty-three (23) through twenty-five (25) of the Opinion dated April 25, 2013.

For analysis of the issue herein numbered twenty-one (21), the Superior Court is directed to pages twenty-five (25) through twenty-seven (27) of the Opinion dated April 25, 2013.

For analysis of the issue herein numbered twenty-two (22), the Superior Court is directed to pages twenty-seven (27) through twenty-nine (29) of the Opinion dated April 25, 2013.

Because of the reasoning contained herein, as well as the analysis contained in the Opinions dated May 4, 2012 and April 25, 2013, the Defendant's appeal should be denied.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2013 AUG -5 P 2: 37

15

HELEN I. MORGAN
PRO AND CLERK



TRANSMISSION VERIFICATION REPORT

TIME : 08/06/2013 08:45
NAME : LC PROTHONOTARY
FAX : 7246542824
TEL : 7246542824
SER.# : BROLSJ990845

| DATE,TIME | 08/06 08:43 |
| FAX NO./NAME | OLSON B |
| DURATION | 00:02:17 |
| PAGE(S) | 16 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE COURT OF COMMON PLEAS |
| | : | |
| | : | LAWRENCE COUNTY, PENNSYLVANIA |
| vs. | : | |
| | : | NO. 692 of 2009, C.R. |
| WALTER KEVIN MOORE, III, | : | |
| | : | OTN: K894083-1 |
| Defendant. | : | |

## ORDER OF COURT

**AND NOW**, this 5th day of August, 2013, the Court having received Defendant's Concise Statement of Matters Complained of on Appeal, with Deputy Attorney General Maureen Sheehan-Balchon, Esquire, representing the Commonwealth, and with Bradley G. Olson, Jr., Esquire, representing the Defendant, the Court hereby **ORDERS and DECREES** as follows:

1. The Court issues the attached Opinion pursuant to Pa R.A.P. 1925(a).

2. The Clerk of Courts shall properly serve notice of this Order and attached Opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the Court's file.